THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WYMOND THURMOND, JR., Defendant-Appellant.

Second District    No. 2—93—0357

Opinion filed May 25, 1994.

Michael T. Norris, of Law Offices of Michael T. Norris, of Schaumburg, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers, Robert J. Biderman, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, Wymond Thurmond, Jr., appeals the circuit court's order denying his motion to withdraw his guilty plea. On January 29, 1993, defendant entered a negotiated guilty plea to reckless homicide (Ill. Rev. Stat. 1991, ch. 38, par. 9—3(a) (now 720 ILCS 5/9—3(a) (West 1992))). Pursuant to the agreement, the court sentenced defendant to four years' imprisonment. Defendant moved to withdraw the plea, contending that defense counsel had located an expert witness who would testify that the decedent, rather than defendant, was at fault in the fatal accident which resulted in defendant's plea. The court denied the motion. On appeal, defendant contends that the court abused its discretion in denying the motion where defendant had a defense worthy of consideration based on facts which were unknown to him at the time he entered the plea.

On August 9, 1992, defendant was involved in an automobile accident in Lake Villa, Illinois. Defendant's car collided with a car driven by Michael Nichols, killing Nichols. Defendant was hospitalized after the accident and claims to have little recollection of it. A blood test performed on defendant at the hospital showed a blood-

alcohol content of .19. It is undisputed that Nichols was also legally intoxicated at the time of the accident.

The grand jury indicted defendant for reckless homicide and driving with a revoked license. Defendant was released from the hospital and arraigned in October. He was represented by the public defender, who filed numerous pretrial motions.

During discovery, the State disclosed that Officer Philip Scarlette would testify as an accident reconstruction expert. Scarlette opined that defendant was responsible for the fatal accident. In response to the State's request, defendant disclosed Dan Pacheco and Oliver Elsner as potential expert witnesses in the field of accident reconstruction.

On December 21, 1992, the court denied defendant's motion to suppress the results of the blood-alcohol test. At that time, the matter had been set for trial on December 28, 1992. On that date, the State requested a day-to-day continuance because a witness was unavailable.

Defense counsel requested leave to withdraw or, in the alternative, a continuance to permit defendant to retain new counsel. The court denied both motions and defense counsel stated that he was ready for trial.

The next day, the State informed the court that its witness would not be available until January 8 and requested another continuance. Defense counsel noted his objection, but the court continued the cause to January 13, 1993.

On January 12, 1993, defendant appeared through newly retained counsel, Michael Norris. Norris requested a continuance until the March trial call to permit him to prepare for trial. Norris represented that if the court held him to trial on January 13, he would still represent defendant. The court, through Judge Starck, continued the cause to Judge Goshgarian's February 1 trial call.

On January 29, Norris appeared before Judge Goshgarian to request a further continuance. Norris stated that he had retained a new accident reconstruction expert, but that the witness needed more time to investigate the accident before rendering an opinion. The prosecutor informed the court that defendant's previous expert had agreed with Scarlette's opinion.

The court denied defendant's motion. Later that day the parties appeared before the court and presented a negotiated plea agreement. Defendant would plead guilty to reckless homicide in exchange for a maximum sentence of four years. In response to the court's queries, defendant stated that his plea was voluntary and that no one had made any promises or threats to persuade him to plead guilty. After

defendant agreed to the factual basis the court accepted the plea and imposed a four-year sentence.

Defendant filed a motion to vacate the guilty plea. At the hearing on the motion, Norris informed the court that the expert witness had completed his investigation and rendered an opinion that defendant was not responsible for the accident. The witness would testify that the accident occurred in defendant's lane, rather than in Nichols' lane. Moreover, the witness would testify that Scarlette's analysis and opinions were flawed.

In arguing the motion, defense counsel stated that defendant felt coerced into pleading guilty. With little independent recollection of the accident and no witness to contradict the opinion of the State's expert, defendant felt that he had no choice but to plead guilty. In addition, both the State and defense counsel had advised him that, because of his driving record, if he went to trial and were found guilty he could receive a sentence of from 10 to 14 years. The court denied the motion, and defendant perfected this appeal.

Defendant contends that the court abused its discretion in denying his motion to withdraw the guilty plea after the court had denied his request for a continuance to allow the newly retained expert to render his opinion. Moreover, after the plea was accepted, the expert's opinion established for the first time that he had a viable defense. The State responds that defendant's plea was voluntary and that the expert's opinion would not establish a defense worthy of consideration in light of the State's strong case.

■ A defendant has no absolute right to withdraw a guilty plea, and whether to allow a defendant to withdraw his plea is within the sound discretion of the trial court. (*People v. Kokoraleis* (1990), 193 Ill. App. 3d 684, 691.) Generally, such a motion should be allowed if the plea resulted from a misapprehension of law or fact, where defendant has a defense worthy of consideration, or where there is a doubt of his guilt and the ends of justice would be better served by submitting the cause to a trial. (*People v. Worley* (1966), 35 Ill. 2d 574, 576; *People v. Gasper* (1988), 167 Ill. App. 3d 218, 221.) Defendant bears the burden of demonstrating sufficient grounds to permit the withdrawal of the plea. *Kokoraleis,* 193 Ill. App. 3d at 691-92.

In *Kokoraleis,* defendant made statements to police implicating himself in the murders of a number of young women, including Lorraine Borowski, Linda Sutton, and Carole Pappas. After this court reversed his convictions of murder and rape, defendant pleaded guilty to the murder of Sutton. About three weeks after he entered his plea, the body of Carole Pappas was discovered in her car at the bottom of a lake. The coroner ruled that the cause of death was accidental drowning.

Defendant moved to withdraw his guilty plea. Defendant, who was borderline mentally retarded, claimed that the police had coerced him into confessing to the crimes and that he merely repeated what he thought they wanted him to say. Since the discovery of Pappas' body showed that his confession to her murder was incorrect, it must have cast doubt on his confessions to the other murders as well.

The trial court rejected this argument. This court affirmed, noting that defendant's "misapprehension" was not the result of misrepresentations by the State or the court. Furthermore, the court explained that the soundness of counsel's advice cannot be measured by facts unknown to the parties at the time the plea was entered. "The inquiry must focus 'not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.'" *Kokoraleis*, 193 Ill. App. 3d at 692, quoting *McMann v. Richardson* (1970), 397 U.S. 759, 771, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1449.

In this case, defendant does not specifically contend that his decision to plead guilty was the result of any misapprehension. Rather, he contends that the court should have permitted him to withdraw his plea solely because he presented a defense worthy of consideration. Defendant concedes that he had been prepared to plead guilty to driving with a revoked license in exchange for a three-year sentence. Defendant decided to accept the State's offer of a four-year sentence for reckless homicide rather than face the very real possibility of a 10- to 14-year sentence if he were convicted following a trial.

Defendant now attempts to argue that he was coerced into pleading guilty because the State threatened to withdraw its offer of four years and raised the specter that defendant could receive a double-digit sentence. However, this is no different than the decision faced by any criminal defendant in deciding whether to accept a plea bargain. The possibility always exists that the defendant will receive a harsher sentence if convicted following a trial.

Moreover, the voluntariness of the plea was not negated by counsel's subsequent discovery of a witness who would allegedly contradict part of the State's case. It is impossible to evaluate this claim, however, because the witness' report is not included in the record on appeal. Counsel's bare assertion that the witness would disagree with Scarlette's conclusions and criticize his methodology does not necessarily establish a viable defense. The State would still be able to show that defendant was driving without a valid license and with a blood-alcohol content of .19, nearly twice the legal limit, and the

State's expert would testify that the accident occurred while defendant was in the oncoming lane of traffic. Whether the unknown testimony of another expert would result in defendant's being found not guilty is pure speculation.

It is also significant that the expert's opinion did not come to light until after the plea had been entered. *Kokoraleis* teaches that the plea must be evaluated at the time it was entered. It is always possible that after a defendant pleads guilty an expert will come forward who will offer to contradict some of the State's evidence. Here, defendant's previous attorney had reportedly consulted with an expert, who agreed with the State's witness' conclusions.

■ To obtain a continuance to secure the presence of a witness, a defendant must establish that he was diligent in attempting to locate the witness, that the evidence would be material, and that he would be prejudiced by the absence of the testimony. (*People v. Ward* (1992), 154 Ill. 2d 272, 307; *People v. Watson* (1989), 178 Ill. App. 3d 796, 806.) Defendant could not meet his burden here. The case had been pending for nearly three months when defendant brought in new counsel on the eve of trial. Counsel obtained a continuance to prepare for trial, but did not mention the need to secure an expert witness. Then, on the eve of the continued trial date, defendant sought another continuance to consult with a newly retained expert. It appears that an expert whom defendant previously consulted rejected his theory of the case. Thus, defendant cannot establish diligence. Moreover, without the substance of the witness' proposed testimony, we are unable to determine whether the evidence would have been material or whether defendant would have been prejudiced without it.

The case on which defendant primarily relies, *People v. Jameson* (1944), 387 Ill. 367, is readily distinguishable. In that case, the defendant was indicted for killing a cab driver. The defendant, who was 22 years old and had a fourth-grade education, appeared before the court without counsel and pleaded guilty. An attorney appointed by the court subsequently interviewed defendant and learned facts that might have established self-defense. The supreme court reversed the denial of defendant's motion to withdraw his plea. The court found that at the time defendant entered his plea he did not understand the law of self-defense. By pleading guilty, he meant only that he admitted firing the shots which killed the victim and did not understand the legal consequences of his plea.

■ In the present case, defendant received the competent assistance of counsel at all stages of the proceedings. Moreover, he accepted the State's offer of a negotiated plea rather than entering a blind plea. These facts demonstrate that defendant made an informed

decision when he agreed to the State's offer. The subsequent locating of an allegedly favorable witness does not alter this conclusion.

For the foregoing reasons, the circuit court's judgment is affirmed.

Affirmed.

McLAREN and PECCARELLI, JJ., concur.